# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

DEBI ANDREWS,

     Plaintiff,

v.

SIENA HEIGHTS UNIVERSITY,
DOUGLAS PALMER, and FRAN
JOHNSON,

     Defendants.

Case No.

Hon.

---

David A. Nacht (P47034)
Grace Cathryn Cretcher
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com
gcretcher@nachtlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Debi Andrews, by and through her counsel,

NACHTLAW, P.C., and for her Complaint, hereby states as follows:

## INTRODUCTION

1.  Plaintiff Debi Andrews (hereinafter, "Plaintiff") brings this civil action

against Defendants pursuant to Title IX of the Education Amendments of 1972, 20

U.S.C. § 1681 *et seq.* (hereinafter, "Title IX"), the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2201 *et seq.* (hereinafter, "ELCRA"), and Michigan common law, to remedy unlawful retaliation, wrongful termination, and defamation against her.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Debi Andrews is an individual residing in Tecumseh, Michigan, Lenawee County.

3.      Defendant Siena Heights University (hereinafter, "SHU") is a domestic non-profit corporation located and operating in Adrian, Michigan, Lenawee County.

4.      Defendant Douglas Palmer was at all relevant times the President of SHU.

5.      Defendant Fran Johnson was at all relevant times the Director of Human Resources for SHU.

6.      This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

7.      This Court also has supplemental jurisdiction over the state law claims pled herein pursuant to 28 U.S.C. § 1367, which provides for such jurisdiction over all claims "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy," including "claims that involve the joinder… of additional parties."

2

8.    Venue is appropriate under 28 U.S.C. 1391(b)(1) and (2), as the Defendants are domiciled in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred therein.

9.    Plaintiff is contemporaneously filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, alleging retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and will move to amend this Complaint to add this additional claim once the requisite administrative process concludes.

## FACTUAL ALLEGATIONS

10.    Plaintiff began her employment with Defendant SHU on February 26, 2024, as the Chief Financial Officer & Vice President for Business Affairs.

11.    Plaintiff was qualified for the position.

12.    Plaintiff met expectations and performed adequately.

13.    Plaintiff's immediate supervisor was Defendant Palmer.

### Plaintiff's Work as CFO & Vice President for Business Affairs

14.    Plaintiff's first task was to come up with a balanced budget for Defendant SHU, essentially on her own.

15.    Plaintiff was aware of Defendant SHU's extensive budgetary issues upon hire and had been apprised that there needed to be significant changes made.

16.     By the beginning of May, Plaintiff successfully presented *multiple* avenues for balancing the budget to Defendant SHU's Board of Trustees.

17.     From there, Plaintiff set about identifying – and addressing – Defendant SHU's budgetary issues, including but not limited to improper check requests by coaches from Fundraising accounts to compensate themselves, members of their staff, and on one occasion a family member, and improper labeling of expenses as student expenses that were actually for personal use.

18.     Additionally, Defendant Palmer instructed Plaintiff to review and approve all hiring decisions, pay rates, and purchases to keep close watch over the budget.

19.     This quickly became a problem when Plaintiff began to make decisions that Defendant Palmer did not agree with.

20.     In the weeks before being improperly walked out, Plaintiff did not approve a hiring request from the Vice President of Student Affairs and Student Success for a new Dean of Students.

21.     Although Defendant Palmer had previously represented that he hoped this Vice President would leave the University, he suddenly started advocating for the hiring decision, stating he hoped it would bring light to what the Vice President of Student Affairs and Student Success "actually did all day," since he "had no idea."

4

22.     Plaintiff explained that there was not enough space in the budget for a new hire at over $100,000.00, and there was no margin for error.

23.     Plaintiff suggested that if he wanted to take on an unbudgeted expense, it would be more appropriate to hire staff for departments that were out of compliance, like Human Resources or the Business Office, or, if Defendant Palmer insisted on the search, a posting with a salary range of $55,000.00-$60,000.00.

24.     Defendant Palmer did not like this suggestion, stating that it would be "a failed search."

25.     The week before Plaintiff was walked out, Defendant Palmer *again* tried to push Plaintiff into approving the hire as requested.

26.     Plaintiff remained resolute, explaining that the hire simply would not fit into the budget she had been hired to balance.

### Plaintiff's Working Relationship with Defendant Johnson

27.     Right after onboarding, Defendant Palmer indicated that he had not "interfered" with Plaintiff's onboarding so that she could see how "bad" Defendant Johnson was at her job as Director of Human Resources.

28.     Within her first week at Defendant SHU, Plaintiff had received multiple complaints from *every* Vice President about Defendant Johnson's performance.

29.     Concerningly, Defendant Palmer made a comment to Plaintiff about how he "need[ed] to do something" about Defendant Johnson.

30.     Within Plaintiff's first three months, she found herself being assigned to re-do Defendant Johnson's work, take over other assignments, and overall share Defendant Palmer's critiques of Defendant Johnson's work on his behalf.

31.     It seemed that Defendant Palmer was trying to put distance between himself and Defendant Johnson, using Plaintiff as the intermediary.

32.     On May 13, 2024, in particular, Plaintiff had a meeting with Defendant Johnson about her failure to complete a project called "Summer Hours."

33.     Plaintiff offered feedback and indicated to Defendant Johnson that she would be available to answer any questions Defendant Johnson might have.

34.     Instead, Defendant Johnson submitted a letter of resignation on May 14, 2024, listing her last day as June 7, 2024.

35.     At a SHU fundraiser on June 7, 2024, Plaintiff was made aware that Defendant Johnson had defamed her to other SHU employees.

36.     Defendant Johnson knowingly and falsely told third parties, including Defendant SHU's Deputy Chief of Public Safety, that Plaintiff was having an affair with another SHU employee.

37.     Plaintiff would later find out during Defendant SHU's investigation of Defendant Johnson's false and retaliatory complaint against her that Defendant Johnson further falsely stated that she had seen Plaintiff and the SHU employee having sexual relations in Plaintiff's office.

**Plaintiff's Protected Activity under Title IX and ELCRA**

38.    Also in May of 2024, Plaintiff had a conversation with Jennifer Brooket, SHU's Vice President for Institutional Advancement, and Krissie Barnes, Defendant Palmer's Chief of Staff, concerning Defendant Palmer's odd behavior and reckless decisions.

39.    During this conversation, Ms. Brooket expressed that Defendant Palmer's behavior had completely changed toward her after she declined his invitation to go with him to Chaloner's Cigar House and Bar in Adrian.

40.    Ms. Brooket elaborated that after she turned him down, Defendant Palmer was no longer interested in what was going on in her department, had reduced their one-on-one meetings to five minutes or less – if they took place at all – and the only way to speak with him for longer was to accompany him to the cigar bar.

41.    Ms. Brooket further expressed her concerns that the President wanted her to meet with his former student, whom she believed was being brought in to replace her.

42.    Ms. Barnes shared that she had gone to the cigar bar with Defendant Palmer once, despite feeling very uncomfortable and knowing that her husband would not approve, because she didn't feel she could refuse her boss.

43.    Plaintiff told the women that thankfully Defendant Palmer had never tried to get her to go to Chaloner's with him, but the pressure they were put under to

do so was not acceptable, and it was illegal for Defendant Palmer to blacklist Ms.
Brooket for declining to accompany him to a bar.

44.     In the presence of Ms. Barnes, Plaintiff further stated that the situation
"had Title IX written all over it" and encouraged Ms. Brooket to file a discrimination
complaint against Defendant Palmer.

**The "Perfect Storm" Caused by Plaintiff's Improper Termination**

45.     Defendant Palmer continued to make it impossible for Plaintiff to do
her job.

46.     Despite her sound advice, Plaintiff was actively impeded from bringing
Defendant SHU into compliance.

47.     On August 2, 2024, Defendant Palmer raised concerns to Plaintiff that
he was being accused of trying to get rid of gay employees at Defendant SHU.

48.     Defendant Palmer instructed Plaintiff and Gina Rossetti, the new Vice
President of Academic Affairs – who at that point had only worked at SHU for four
weeks – to handle all conversations with attorneys should he have Title IX
complaints filed against him.

49.     Plaintiff did not think this was appropriate.

50.     Around the same time, Plaintiff opposed Defendant Palmer's decision
to hire his neighbor for a marketing position because it did not conform with prior
discussions about the marketing budget.

51.     Also around this time, Plaintiff opposed Defendant SHU's proposed budget, telling Defendant Palmer clearly that the proposal was not based on sound accounting and she refused to lie to Defendant SHU's Board of Directors or donors about what the university had or had not done in order to secure funding.

52.     This struck a chord with Defendant Palmer, who placed Plaintiff on leave on August 7, 2024, within just days of this conversation, and had her immediately removed from the premises.

53.     Two days later, Defendant Palmer clarified this would be unpaid leave.

54.     At the same time, Defendant SHU launched an unfounded and retaliatory investigation based on Defendant Johnson's defamatory statements.

55.     Despite Plaintiff clearly establishing that there was no evidence whatsoever to support the allegation that she had engaged in any improper relationship, Defendant SHU presumably found Plaintiff responsible anyway.

56.     Plaintiff can only presume the conclusion of Defendant SHU's investigation as she was never given access to any of the investigation's materials or conclusions whatsoever.

57.     Instead, Plaintiff was improperly and retaliatorily terminated by Defendant SHU on August 20, 2024.

58.     Had Plaintiff not opposed Defendants' fraud and encouraged her coworkers to complain about Defendant Palmer's discriminatory behavior, she would not have been terminated.

**COUNT I**
**Retaliation in Violation of Title IX of the Education Amendments of 1972**
**20 U.S.C. § 1681 *et seq.***
*(Against Defendant SHU)*

59.     Plaintiff incorporates the preceding allegations as if fully restated herein.

60.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

61.     Defendant SHU is an education program receiving Federal financial assistance.

62.     Plaintiff engaged in protected activity by encouraging Ms. Brooket to make a Title IX sex discrimination complaint about Defendant Palmer's behavior.

63.     Defendant SHU was aware of Plaintiff's protected activity because she engaged in it in the presence of the Chief of Staff for SHU's President.

64.     Defendant SHU subjected Plaintiff to adverse employment action in retaliation for her protected activity, including but not limited to suspending her without pay and terminating her employment.

65.     Defendant SHU's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling her to punitive damages.

66.     As a direct and proximate result of Defendant SHU's unlawful actions, Plaintiff has suffered significant damages, including but not limited to removal from her position at SHU; loss of income; loss of career opportunities and earning capacity; and loss of personal and professional reputation.

## COUNT II
### Retaliation in Violation of the Elliott-Larsen Civil Rights Act
### M.C.L. 37.2201 *et seq*.
*(Against Defendants SHU and Palmer)*

67.     Plaintiff incorporates the preceding allegations as if fully restated herein.

68.     At all relevant times, Plaintiff was an employee and Defendants SHU and Palmer were employers as defined by ELCRA.

69.     Plaintiff engaged in protected activity by encouraging Ms. Brooket to make a sex discrimination complaint about Defendant Palmer's behavior.

70.     Defendants SHU and Palmer were aware of Plaintiff's protected activity because she engaged in it in the presence of Defendant Palmer's Chief of Staff.

71.     Defendants SHU and Palmer subjected Plaintiff to adverse employment action in retaliation for her protected activity, including but not limited to suspending her without pay and terminating her employment.

72.     But for Plaintiff's protected activity, Defendants SHU and Palmer would not have taken adverse employment action against her.

73.     Defendants acted willfully.

74.     As a direct and proximate result of Defendants SHU and Palmer's unlawful actions, Plaintiff has suffered significant damages, including but not limited to removal from her position at SHU; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT III
### Wrongful Termination in Breach of Public Policy
*(Against Defendant SHU)*

75.     Plaintiff incorporates the preceding allegations as if fully restated herein.

76.     An implied cause of action exists in Michigan law for wrongful termination when the termination violates a clearly mandated public policy. *See*

*Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695-96, 316 N.W.2d 710, 712 (1982); *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 9, 483 N.W.2d 629, 633 (1992).

77.     On or about August 20, 2024, Defendant SHU terminated Plaintiff in contravention of long-standing, clearly settled Michigan public policy.

78.     Defendant SHU retaliated against and terminated Plaintiff for doing her job, reporting and refusing to participate in potential fraud and other misconduct.

79.     As described above, the discharge was in illegal retaliation for Plaintiff's reporting of potential legal violations and/or refusal to violate the law, in breach of well-established public policy.

80.     Defendant SHU terminated Plaintiff wrongfully, maliciously, intentionally, and in bad faith, causing her emotional distress and humiliation in the process.

81.     Defendant SHU's termination of Plaintiff has caused significant economic hardship.

82.     As a direct and proximate result of Defendant SHU's unlawful actions, Plaintiff has suffered significant damages, including but not limited to removal from her position at SHU; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT IV
### Defamation *Per Se*
#### *(Against Defendant Johnson)*

67.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

68.    Defendant Johnson made false and defamatory statements concerning Plaintiff to third parties, including but not limited to accusing Plaintiff of sexual conduct in the workplace.

69.    These third parties included coworkers and supervisors.

70.    Defendant Johnson's defamatory statements constitute defamation *per se* pursuant to MCL 600.2911(1), which "is the codification of the common-law principle that words imputing a lack of chastity or the commission of a crime constitute defamation *per se* and are actionable even in the absence of an ability to prove actual or special damages…" *Cetera v. Mileto*, 342 Mich. App. 441, 450, 995 N.W.2d 838, 844 (2022) (citing *Burden v. Elias Bros. Big Boy Rests.*, 240 Mich. App. 723, 728, 613 N.W.2d 378, 381 (2000)).

71.    Defendant Johnson knew these statements were false and acted in reckless disregard of their truth or falsity.

72.    Defendant Johnson knew, or should have known, that these false statements would cause harm to Plaintiff, in both her professional and personal lives.

14

73.     Defendant Johnson's defamatory statements did harm Plaintiff by being used as a basis for her improper termination, resulting in significant monetary damages.

74.     Defendant Johnson also caused Plaintiff serious emotional distress and damaged Plaintiff's professional reputation.

83.     As a direct and proximate result of Defendant Johnson's unlawful actions, Plaintiff has suffered significant damages, including but not limited to removal from her position at SHU; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff request the following relief from this Court against Defendants:

A. Economic damages resulting from Defendant's actions including but not limited to lost wages, lost profits, lost employment, and lost job opportunities;

B. Noneconomic damages including but not limited to harm to reputation, embarrassment, humiliation, severe emotional distress, and deprivation of enjoyment of life;

C. Exemplary damages;

D. An award of costs and reasonable attorney fees; and

E. Whatever other relief this Court may find appropriate.

Respectfully submitted,

NACHTLAW, P.C.

/s/ David A. Nacht
David A. Nacht (P47034)
*Attorney for Plaintiff Debi Andrews*

Dated: April 8, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISON**

DEBI ANDREWS,

      Plaintiff,                                          Case No.

v.                                                                        Hon.

SIENA HEIGHTS UNIVERSITY,
DOUGLAS PALMER, and FRAN
JOHNSON,

      Defendants.

_____

David A. Nacht (P47034)
Grace Cathryn Cretcher
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com
gcretcher@nachtlaw.com

_____

## JURY DEMAND

NOW COMES Plaintiff DEBI ANDREWS, by and through her attorneys,

NACHTLAW, P.C., and hereby demands a trial by jury in the above-captioned

matter for all issues so triable.

                Respectfully Submitted,

                NACHTLAW, P.C.

                */s/ David A. Nacht*
                David A. Nacht (P47034)

17

Grace Cathryn Cretcher
*Attorneys for Plaintiff*
501 Avis Dr., Ste. 3
Ann Arbor, MI 48108
(734) 663-7550

Dated: April 8, 2025